Case No. 15-5145, Jesse R. Redmond, Jr., Appellant v. Isaac Fulwood, Jr., former Chairman, United States Parole Commission. Mr. Wilford, meet this CRI. Mr. Fassenroth, for the appellee. Good morning. Good morning, Your Honor. May it please the Court in support of Jesse R. Redmond's position. I'd like to reserve two minutes for rebuttal. Thank you. The District Court committed legal error in sua sponte dismissing the complaint on the assumption that absolute immunity applied to parole commissioners. This Court should reverse. Absolute immunity should only be granted in, quote, exceptional circumstances where it is demonstrated that it is essential for the conduct of the public business. Those circumstances are not present here, and this Court should not grant parole commissioners absolute immunity for three reasons. First, determinations made by parole commissioners for D.C. Code prisoners are not subject to agency or judicial review. Second, parole commissioners are at-will employees and thus susceptible to outside influence. And third, commissioners are free to ignore the results of any procedures governing the Turning to our first issue. Before I get with that, do you have an argument that the client could prevail if we applied qualified immunity? Yes, ma'am, I think we do. I think read liberally, the client's complaint alleges a series of potential constitutional violations, including potentially a substantive due process argument that he was denied parole on the basis of an unwritten standard, the inability to admit guilt, a potential equal protection clause claim that he's been Sorry, but it has to be not just a potential constitutional claim, it has to be clearly established constitutional violations. Yes, ma'am. I think it would be clearly established that denying parole on the basis of arbitrary standards, for example, an unwritten standard that the parole board uses that it says you will not be granted parole unless and until you admit guilt, which is not the standard in the regulation. The regulation is, have you committed any outside infractions or have you committed any infractions? Is there a reasonable probability that you will live and remain at liberty without violating the law? And that it's not, I think, prejudicial to society is the third term. Well, those are very broad standards, you would agree. Absolutely. And under the second, seems to me that's what the statement of reasons suggested. I believe that they made the notice of action, which is the denial of parole in 2011, made that statement, said that there is no reasonable, there is a reasonable probability that he will not live and remain at liberty. Because we view that admission of guilt is part of the rehabilitation program. Yes, it said it was on that basis. And it said a series of times that the admission of guilt was the sort of contingent factor and was essentially implicit in that. And it became explicit in the, actually, the response brief in this proceeding where they attached the four-page internal memoranda, which was their denial of reopening. So let me just follow up on Judge Millett's question. And as I read both parties' briefs, that regarding qualified immunity, everyone would like a further opportunity to brief the issue or send it back to the district court. Yes, ma'am. I think that's the difference between this and, for example, Taylor, where at the district court level there was both a complaint, a 12b6 motion, a response and a reply. The Taylor court dismissed at the district level on the basis of absolute immunity. And this court found that it had enough information to dismiss on the basis of – sorry, the district court dismissed on absolute. This court said, we don't need to reach that issue. We have enough evidence to dismiss on qualified because there's no clearly established claim. Judge Kavanaugh, in that case, in his concurrence, did reach absolute and did say that this court should reach the issue to deny absolute but should uphold qualified in that case, dismiss on qualified only. This is different. We don't have any underlying record. This case was dismissed sua sponte prior to even service, as Defendant Apelli points out. Well, we can decide qualified immunity on pleadings. That's actually encouraged based on the contours of the complaint. The only other pleading, I suppose, could be 12b6 motion based on qualified immunity. But if one can just tell by reading the face of the complaint that it doesn't state a claim for a clearly established violation of constitutional rights, what would be the point of the remand? Yes, ma'am, you're right. On a screening mechanism, they can decide on the basis of a complaint and the district court should do so for qualified or absolute. Here we would offer that the complaint alleges a series, and again, I went the arbitrary standard. I would say there's even an equal protection clause claim on the differential treatment between people who admit and don't admit guilt. Admittedly not a suspect class, but there's no rational basis in the record for that distinction. And finally, is there the potential, is it compelled speech, to require somebody to admit guilt to get out of jail? And this court, that's not the standard in the regs. The regs require only the things we went over. In particular, the reasonable probability, and the commission has put forward a different standard internally and is evaluating people on that basis. So your position now before this court is that we could go ahead and decide the qualified immunity case issue now? Your Honor, I do not think so. I think you have sufficient information to decide absolute immunity, but you would need to remand for further development. I think we have put forward that there is, and I think the appellant in whom we are supporting has put forward in his complaint sufficient plausible evidence that there is a clearly established constitutional violation. Presumably the defendant appellee would like a chance to respond to that and further brief out those issues. Here, however, on the absolute immunity grounds, there's no need for further briefing. We've both substantially briefed that issue, and the record is sufficient. You don't need facts. You don't need facts to determine whether these allegations state clearly established violations of constitutional law. And I suspect the defendants would be happy with the case gone on whatever basis it's gone. I'm sure defendants will be happy to be dismissed on either basis. I thought you had said we would just look at the complaint. We wouldn't go back and have to have discovery before we look at qualified immunity, but decide it right up front on the basis of this complaint. So I'm just not sure what more is needed, unless you mean briefing on whether this complaint states clearly established constitutional violations. Is that what the remand would have to be for, briefing on that pure legal question? Your Honor, yes. I thought you were suggesting further briefing, but didn't necessarily have to go back to the district court. It could just be the way I read the government's brief. I guess the only problem was the defendant had never been served. Yes, Your Honor. But you could have a briefing in this court, supplemental briefing, on the qualified immunity issue. What I'm getting at is when I reread Morrissey Supreme Court's discussion, I thought qualified immunity to win on that seems to me it's going to be a difficult road, unless you provide me with some more authority. Your Honor, and it may well be a difficult road, and you may be able to have additional briefing here. I will point out that the discovery that we never had, or the appellant never had, may have identified the basis of this standard that seemed implicit and is now explicit, but, again, only came out in briefing at this court. So we could brief it here. I would suggest that this court do what it did, for example, in Atherton, and deny the absolute immunity claim, and in that discussion said, while clearly established was touched on, I think the word was scantily briefed, the preference was to remand that decision back to the district court on the basis of the qualified immunity claim. So I would suggest that that's the similar process here. Your Honor. Well, I noticed as to the absolute immunity claim, the district court cited two other district court cases that didn't provide any analysis. Absolutely. I'm not sure where that takes us. Absolutely. The district court cited two D.C. district court cases, no D.C. circuit cases, no Supreme Court cases for its determination that the defendant was absolutely immune from suit. Even those other district court cases only cite to potentially persuasive authority from sister circuits. They don't cite to any binding authority. So what do you think our sister circuits have missed? I think your sister circuits have failed to address the binding requirements from first Butts and then Cleavenger. The fact that a parole commissioner is acting in a quasi-judicial capacity is insufficient. There needs to be more. There needs to be a quasi-judicial capacity. It needs to be the potential for further litigation from disappointed litigants. And there needs to be safeguards in place. Do you agree that this is even, like, what does quasi-judicial mean, I guess, is the question. If you don't have sort of a due process hearing here, people just send in papers, precedent doesn't apply. They have this enormous range of discretion that's not, well, there's some factors given. At the end of the day, they have this, as they tell us, this is not reviewable, unreviewable discretion. So how do I know whether it really is quasi-judicial, what they're doing, or they are really more like a clemency court? Your Honor, I don't have time to explain. Please respond. I agree. This is substantially different than a judicial hearing. The precedent looks and starts from the Supreme Court level. Okay, judges have immunity. Okay, now we're going to work to people that are sort of involved or intrinsically involved, intimately involved in the judicial process. And out of that has come this sort of quasi-judicial immunity and tying it to the judicial process. Here, I think we are several standard deviations from that process, not just on whether or not it's even a judicial act that they're making. Evaluation of evidence, weighing of evidence, and discretionary determination. But particularly importantly, whether there are any of the safeguards in place in a judicial process, whether any of the safeguards from a judicial process are in place in this process, to allow us to dispense with private money damages rights or actions to control unconstitutional conduct. And here, as you mentioned, there are no safeguards that you would get in a judicial process. Well, you don't necessarily have to have the same type of safeguards as in a judicial process, do you? Absolutely. You do not. And I don't think we have to. So as I understand it, some circuits have viewed the parole board as an arm of the sentencing court that members of the parole board would be subjected to all kinds of harassment by people whose parole is denied. I think even one of the cases says these are normally not people of great means, and therefore you wouldn't want to have personal liability, things like that. Even though the state or the federal government would pick that up. Yeah. And then here you have the situation where a D.C. prisoner now is subject to the U.S. Commission, where U.S. prisoners do have an internal appeal, which D.C. prisoners do not have. So the government says what the D.C. prisoners have is basically a Rule 59e motion. If you have some new evidence or something of that ilk, that you could ask the parole commission to reconsider its decision, which was done here at least once. Absolutely. So can I take each of those in turn? So on the first piece, which is what the other circuits have looked at and your sister courts have looked at, they've either just looked at whether it's quasi-judicial and ended it there, or gone to the second piece, which is the sort of potential for harassment, disappointing litigants. Inmates are conceivably, I think even at a Supreme Court level, they've indicated quite likely to sue on the basis of being disappointed. This court's standard in Waukesha, and more importantly, the Supreme Court in Cleavanger, has said that's not enough. And in Cleavanger, you had a case in which the disciplinary officials at a prison, so you have the same thing, you are doing adjudication. I know, but the Supreme Court, there's that language there, contrasting a parole board. It's an independent body. Absolutely. But the parole board was not at issue in that case. I know, but just looking at a little dictum there. It's not even dictum. I mean, it's just contrasting the committee to a parole board. It's citing sellers with approval. Yep. So I would point to the holding in Cleavanger, which said that we're going to deny absolute immunity for these disciplinary officials, despite the existence of factors one and two, because the full APA protections that are existent in Butts are not available. Interestingly, even the dissent in Cleavanger accepts that line of argument, but says that it would have upheld absolute immunity because there were three internal administrative review and appellate rights available, which, in fact, they exercised. So both said that the procedural safeguards are critical. Here, we have neither any of the protections available under the APA or the internal agency review right, which gets to your second point. On the second point, the notice of action that the prisoners receive is stamped in all capital letters, the above decision is not appealable. And the Department of Justice, on its own website, has confirmed that while certainly federal prisoners have a right to an appeal, D.C. Code prisoners do not. So we have no right to, or the appellant has no right to any form of appeal. It does have a right to a reopening, as Defendant Appellate points out, but that's on the basis of a very limited set of information, new and significant. So one question I had, would supplemental briefing to this court explore that aspect of, you alluded to this equal protection notion, but would that be the nature? I know you can't commit, obviously, but I was just trying to think, what would supplemental briefing provide us? Your Honor, we, of course, have an admittedly inartfully pled complaint, and so I think we'd need to further elucidate the constitutional allegations. But then on the basis of those constitutional allegations, it would probably be exactly that. The clearly established law under which denial of parole on the basis of an unwritten standard, there's been no demonstrations tied to the written standard that's in the regs. The basis of differentiating between people without any rational basis for doing so, and then whether the requirement to admit guilt despite having no regulatory opportunity, or no regulatory requirement, is itself potentially either a compelled speech or some form of self-incrimination. I think that's exactly to what the supplemental briefing would go. But if I may, just to quickly finish on the reopening point, the reopening is only available for new and significant factual and legal information. So if a mistake is made in application of the guidelines, if a mistake is made based on known facts, a mistake is made on the law, there's no recourse. Indeed, here, even the regulations point out the distinction. Look at the federal prisoners who have access to a reopening right. Exact same standard as the D.C. Code prisoners do. They also have to- File a petition for a writ of habeas? Yes, you could file a petition for a writ of habeas, and indeed, Redmond has done so. I believe it was denied. The habeas, however, as the Supreme Court has pointed out in Prizer, is not the appropriate remedy for individuals seeking money damages. This is not attacking the fact or duration of his confinement. It is, instead, attacking the potential constitutional violations that occurred during that hearing. Yeah, file a habeas petition. I guess you could seek declaratory injunctive relief against- Could you seek a declaratory injunctive relief against the parole commission using things like failure to confess to the crime or failure to attend unavailable therapy sessions? Could you challenge that through habeas? I'm just not sure what the habeas looks like. I don't believe that you could, but I could be wrong on that, and I'm happy to do additional research on that. Well, the question, you know, does habeas extend to the conditions of confinement? And it's normally been in a prison setting, and I don't know that it's ever been extended to the parole. There are very limited- Is that a good criteria for continued detention? Yeah. It's not conditioned so much. Right. There are very limited cases that we've been able to identify in which habeas has been extended to a parole setting, and that's in which is there, I think there's a California case in which, is there some evidence to support the parole denial? And interestingly, there's a California appellate court case that says in that case, the individual who was reviewed against the parole board in that case I think said 19 different times that he'd failed to admit guilt. That wasn't a standard, and the California appellate court admittedly state court says, you have failed to provide even some evidence that that admission of guilt is itself an indication of a lack of sort of, I think the standard there was a reasonable probability they'll exist in society. It's, of course, not exactly the same as the D.C. Code standard. I think the court, the case is Henry Atherton, and I'm happy to provide the site. I don't have it right in front of me. Well, we have had equal protection claims. All right. Why don't we hear from the government? Thank you, Your Honors. Thank you. Good morning. May it please the court, Peter Fafneroth on behalf of former Chairman Fullwood. As the court appears to have recognized, the first few factors in the analysis here are easily satisfied, namely that the functions of the parole commission are comparable to those of a judge, and also that the probability, in fact, the certainty of vexatious litigation. Comparable in what way? I'm sorry? Comparable in what way? When you're on parole, you're still in governmental detention. Serving a sentence is just a different, lighter form of detention, correct? You're on parole. You're still under the authority of the government. Sure. And parole can be revoked. And parole can be revoked. So it's not as though your prison sentence has been commuted or anything like that. It's just a question of this is the form of custody we think is appropriate for you now. Almost like you imagine gradation saying you need solitary confinement, you need maximum security. No, you can go in a general prison population. No, you can actually go to a camp. Oh, you can go to a halfway house. Okay, you don't even need a halfway house. You can go on parole. These are all gradations of detention, correct? That is true, but a sentencing court can also suspend sentences, can make recommendations about the type of sentence. You can make recommendations, but yeah. Sure. I'm just trying to understand what the nature of this decision-making is that happens here. And it sounds like the nature of the decision-making is this is we're in the Justice Department. We're executive branch officials, and we are deciding what the proper form of detention is for this individual. Yeah, I think it's very telling that the Supreme Court, in contrasting the BOP disciplinary board at issue in Clevenger, specifically points to parole boards and says, quotes favorably the Ninth Circuit decision in Sellers, and characterizes the parole board member as an impartial professional serving essentially, quote, as an arm of the sentencing judge. That's pretty telling that they are, in fact, part of the judicial function. But it also cites Morrissey v. Brewer, where the court seems to take a different view. It does. I think it's also important to remember that in Forrester, a 1988 decision a few years after Clevenger, the Supreme Court reiterated that the assessment of whether or not an official is acting in a judicial capacity is informal. It can be an informal proceeding. They cited favorably the decision in Stump, which was a 1970s decision by the Supreme Court, with, frankly, shocking facts involving tubal ligation of a minor who didn't even know that she was going to be subject to that procedure and only discovered it years later. And the Supreme Court still found, notwithstanding the ex parte nature of that proceeding in which there was functionally no appeal possible, because she didn't even know until she got married years later that her tubes had been tied, that that state judge, nonetheless, was acting in a judicial capacity and was absolutely immune. Now, but in Clevenger, what the Supreme Court says, page 204, so we don't equate the discipline committee membership with service on a traditional parole board. The board is a neutral and detached hearing body. The parole board member has been described as an armed and sentencing judge by the Senate and Security Court and District Court. But then they go, and in the penalty context, the parole board is constitutionally required to provide greater due process protection than is the institution discipline committee. So they were thinking about a sort of penalty context for parole boards, not this where should this person be housed while in our detention aspect of it. And look, it's powerful stuff. On the Supreme Court it says, even if it's dicked up, it's powerful stuff for me. Don't get me wrong. But it also just seems irreconcilable with the six factors that they lay out in their decision at 202, right? So harassment or intimidation, that's going to happen in every case. Presence of safeguards. I don't know what the safeguards are here. Insolation from political influence. I don't know where that is here. Importance of precedent. None in this situation. Adversary nature of the process. None in this situation. Correctability of error on appeal. None in this situation. So what am I to do with the legal test they lay out when I check those bonds as parole loses? But then they've got language. Although the language is ambiguous, but it's focused on the penalty context as opposed to this context. That's what I'm struggling with, I'm just being honest with you. I hear you, Your Honor. First of all, that last sentence in the paragraph, I read the and in the penalty context to be a moreover in the penalty context. That's how I read it. Obviously, everyone can read it for themselves and conclude what they're going to conclude. I think that the takeaway from... Take some of the air out of the dicta. Yeah. I believe that the... What I do with these factors, that's the legal holding, right? That's the test. I know we've sort of grouped them now into three subcategories, but Longshall doesn't overturn the Supreme Court. So when it talks about safeguards and stuff, I have to march through these six factors, right? I don't believe you do, Your Honor. I don't have to believe Longshall wasn't changing the Supreme Court rule, was it? No, it was not. No, no. So we have to look at these six factors the Supreme Court has laid out. The question is, are those factors that each box needs to be checked, or are they illustrative considerations that a court must determine? I'll take the latter. Let's just look at these things and factor them in. But which of these does parole board meet other than harassment or intimidation, which you also had in the Disciplinary Committee? Which of them does it meet? You agree there's no appeal on the face of the order. I do not agree with that. You don't agree. It says on the order this is not appealable. I believe that the functional availability of the reopening mechanism, which is an opportunity for further review. That's like a 60-D motion. They don't ever call a 60-D motion an appeal, right? Correctability of error on appeal is not the same thing as ability to submit brand new law or evidence to the same decision makers. This is correctability of error on appeal. If it would be a significant piece of information, which is a basis for reopening if, in fact, a prisoner identified an error. Can errors be corrected by reopening? They can. They don't have new evidence or new law. They just say, oh, my gosh, you applied this standard that you're not supposed to apply, like innocence requirement. Could you do that? Could you get reopening? You've made legal error here when you seem to make dispositive or weighty in your analysis the fact that I haven't confessed to this crime. That's legal error, which could certainly be raised on an appeal if you had an appeal. Is that a basis for reopening? It would be a basis for reopening. Because they didn't rebrand his reopening here? Because that is not what the reopening conclusion was. The reopening read what had been offered and found, you know, there was this inconsequential error in the calculation. Right, so they did make a correction. It did. They acknowledged the error, made the correction, and went on. It did not change the outcome. Similarly, I do disagree, by the way, with the assertion by opposing counsel that there has been some new definitive requirement imposed for admission of guilt. To the contrary, the facts of this case are that the prisoner has definitively refused time and again to acknowledge that he committed the offense. And that is not a holding that thou must in all cases admit guilt. To the contrary, in the case of a sex offender who raped his 70-something neighbor, and the question for the parole board is, is this gentleman ready for release to society where he can exist safely? Somebody who has not been rehabilitated, that's a pretty strong power, powerful statement that this gentleman has not been rehabilitated. I just want to make sure I understand the government's official position on reopening. And that is that ordinary appellate errors can be advanced. It is that. Even without arguments about new intervening facts. That would be significant. Your Honor, it would be significant if you pointed out an error. And it is new and significant information that is a basis. This is not parroting Rule 59E. It is not parroting Rule 60B. It is its own standard. And as the facts of this case demonstrate, you can read the lengthy papers that were submitted to the commission by opposing counsel. And they pointed out a lot of things. And pretty methodically, the reopening analysis went through each of those and said, at the end of the day, we've given these thoughtful consideration, but they don't change the outcome. Because we don't believe that they really move the ball. Okay. And then is it an adversary process? I'm sorry? Is it an adversary process? I would... I'm pretty sure the court said it's not an adversary process. It is not adversary in the sense that, you know, the parole board has lawyers there and the prisoner has lawyers there. But the prisoner has a right to representation. The prisoner makes his case. And then the neutral parole commissioner, acting both through the parole commission and the hearing examiner, weighs all that evidence. Certainly, the ex parte proceeding in Stump was not an adversary process either. That's the problem with Stump. But nonetheless, that judge was entitled to absolute immunity. And then insulation from political influence? You know, go back... I know that's what I'm trying to understand. I know they're in the Justice Department, but then they're supposed to have a tradition of independence. But are they removable at will? There's no definitive ruling on that, Your Honor. There's an OLC opinion from 1996 that says they are. That OLC opinion came up in a very different question context, namely whether or not the employment clause, you know, applied there. And there was an extension of some parole commissioners. And there was simply no consideration of how immunity issues would play in. And in the absence of a more thoughtful, more current analysis, it's not necessary for... I'm sorry, what? I'm talking about removable at will, or does the person have to have a higher standard to remove them? Right. I mean, there is simply no decision that is binding on this court about whether or not they are at will employees. And I would invite the court's attention to the legislative history creating the United States Parole Commission, which I cited in the papers, which expressly points out they're supposed to be independent. I would also invite the court's attention to the Bowers decision, which the reply brief by the amicus mentions. It's an 11th Circuit decision from 2014, where the amicus misapprehends what was going on. In that case, there had been allegations, no proof, allegations that, you know, one parole commissioner had acted improperly. And so the 11th Circuit had tried to cure that problem by sending it back to the parole board and saying, you know, get this one parole commissioner out of the process, and then let's see what happens. And on remand to the Northern District of Georgia Federal District Court, there was very substantial discovery, lots of documents exchanged, numerous depositions of all sorts of parole commissioners. And I'm happy to provide the citation of the court. There was a decision in June from the Northern District of Georgia for which there has been a notice of appeal filed, but there have been no proceedings yet in the 11th Circuit, in which repeatedly in that 37-page decision, the Northern District of Georgia found that after all that discovery, there was literally no evidence of political influence on the decision-making process. So in this case, there simply is no evidence from any other that there is a political role on the parole board. I was thinking of situations where states have faced prison overcrowding, and so they've released prisoners. And during the war on drugs, parole was cut back. I mean, those are political decisions that are made that can influence the parole board. So they don't have that total type of independence. There's no evidence that the United States Parole Commission is subject to those kinds of influences. But it's part of the Department of Justice, right? It's appointed by the President. And where is it housed? Physically? It's not part of the Bureau of Prisons. No, it's its own subcomponent within DOJ. And it reports to whom? Do you know, in the Justice Department? The Deputy Attorney General or the Deputy of the Criminal Division? I don't believe it reports. Anybody? It is statutorily authorized, but initially appointed to any two-term commissioners who serve six-year terms. It could be volatile for another term without the appointment of the President in six years. It is administratively under the Department of Justice and under the authority of the DAG. But that's to get an independent question. Right. But you report to the Deputy Attorney General. And the Deputy Attorney General says we've got terrible prison overcrowding problems. There's simply no evidence. For instance, in the Bowers case in the Eleventh Circuit, Your Honor, the problem with that one wayward commissioner that the Eleventh Circuit said, get this person out of the process, was that she actually did go to the front office of the Department of Justice and said, oh, we think that you guys should weigh in here. This is a problem. And the Eleventh Circuit says that was, quote, unprecedented. Well, you could ask for their resignation. Yeah. I mean, they're just not. But, Your Honor, in terms of political influence, to be honest, obviously federal judges are not elected, but there are numerous state court judges who are elected. Just as Rose Byrne was unelected from the California Supreme Court. That had to do with the death penalty. But let me just ask you a question, because I guess we don't need to pursue this, but I think if U.S. attorneys, they serve at will, and the Department has a whole office devoted to making sure they're following whatever the Justice Department's policy is on bringing certain types of offenses, pursuing certain types of investigative strategies, et cetera. And yet, because they're viewed as very directly part of the judicial process, they have absolute immunity. They do. When performing in that capacity. In that capacity only, right. And, I mean, judges only have absolute immunity when performing as judges, not as administrators. But, so, as the Supreme Court, you know, says in Clevenger, it's a fuzzy line. It's not always that clear. You've got the warden calling the shots. It's one thing if you have, as you pointed out, the contrast with this independent parole authority. It's different. It is fundamentally, if one were looking at the role that the Parole Commission serves, it is most fundamentally equivalent to that of, as the Supreme Court says, an arm of the sentencing court. And the fact that every circuit has looked at this issue and has come to the same conclusion, it's telling. Well, I'm trying to figure out what it's telling us, all right. I'm trying to figure out how it's an arm of the sentencing court. It's not part of the judiciary. It is simply part of, you know, someone serves the minimum sentence that the district court gives. And after that, it's housing. It's just like deciding whether you should be at a camp rather than maximum security. It's the exact same type of judgment about risk and safety. And I just don't know why, at this parole, going from camp to parole, we decide it's suddenly this executive branch agent who reports to the DAG is part of the sentencing court. I don't even understand that. Structurally, I don't understand functionally, which is what we really look at. Maybe functionally what they're doing is anything like what courts do. Functionally, what they're doing is they're overseeing hearings. They are making assessments about future dangerousness. Right, but you do that and decide whether to go to maximum security, general population, or a camp, right? So that's an executive branch type of determination. Yes. But also, I mean, it's not that judges in making sentencing decisions play no role in that. They play a role in recommending the appropriate. We don't play a role? Courts don't play a role in parole decisions? No, no, not in parole decisions. I'm sorry. But in equating the parole board's role to that of a sentencing court, a sentencing court certainly can make a recommendation to the Bureau of Prisons that, you know, the judge believes that this would be an appropriate outcome for this particular defendant. And they can ignore it completely because it's an executive judgment where to house somebody and what level of detention to apply. Right? That is true. It's up to the court to say. It is not a final decision. It's up to the court to say. But as part of the district court's function to, in appropriate circumstances, make such recommendations. It's not a judicial function to say where someone should be housed. Can you explain to me how habeas? I mean, one, do you think there is habeas review of parole decisions? And two, how does it work? How might it work with the claims he's raising? Or just how does it work? I just haven't seen one of those habeas claims. There can be habeas review, as numerous circuits have recognized. In fact, the Bowers decision in the 11th Circuit is a habeas case against both the warden and the parole commissioners. And, you know, yes, there will be. What kind of claims are recognizable on habeas? Obviously not damages actions. Right. But if someone thought, to make it much easier than this case, that the, not your parole commission, but some abstract parole commission was making decisions on the basis of race. That's certainly an argument. So you could say that they're applying unconstitutional factors. And so the relief would be, in a habeas case, would it be to remand the parole commission? Or just how does it work? Or does the court say, wow, that was a bad decision? The court can't grant parole on habeas, right? No, the court wouldn't be granting parole. That would be sending it back to the parole board to say, don't consider this unconstitutional consideration. Okay, so that's how it works. Or modify your rules and regulations, something like that. Exactly. It depends on the kind of deficiency that's identified. That could happen on habeas. So let me ask you, maybe you can help us out on this supplemental briefing. Were the court interested in the qualified immunity issue?  I'm happy to submit something if the court will find it helpful. I don't, frankly, find the idea that there's an equal protection clause problem here or a substantive due process problem, particularly in light of this court's decision in Ellis, at all persuasive. I think this is a very easy decision on qualified immunity. So there would be no point in supplemental briefing? Again, if it would be helpful to the court, we are happy to provide it. But I believe that the infirmity. At least, not appellant, but amicus was suggesting it would be helpful to their side, and obviously you would want a chance to respond. If they have things, I think that these arguments are pretty out there, and there's not clearly established law that I'm aware of that would have, that has been breached in this case.  Thank you, Your Honor. We respectfully ask that the decision be affirmed. Counsel for the court, amicus. Thank you, Your Honors. I'll try and be brief. Just a few quick points to follow up on what Defendant Appellant argued. First, while admittedly the Cleavenger Court listed a set of what it said were, I think it was six different factors, A through F, and said that others could be considered. This court in Simon said that there were three factors mandated by Butts. That's the distillation of the six down into the three, the third of which being safeguards. And so which of the safeguards is in place? Yes, you can look to a series of them, and Defendant Appellant has pointed out how judges may not have one of the safeguards, but of course they do have the safeguard of being part of a judicial process with all of the trappings of procedure and available appeals right. Here, as Your Honors pointed out, there are virtually no safeguards in place. And so regardless of which one you look at, it doesn't matter the third factor that's mandated by the Supreme Court holding and is binding under circuit precedent is unavailable. Second, just to briefly address the point that Defendant Appellant made that they had not established a new standard, just to briefly quote the language from the four-page internal memorandum, the commission has determined that until Redman admits to the offense, he cannot understand what caused him to commit the crime in the first place and how to prevent himself from committing another offense in the future, which sounds a lot like a threshold. He has to admit it in order to understand and prevent himself, which is the standard in the rec. So they've converted the responsibility and failure to do. What authority is there that that's completely unconstitutional? They are the parole board. They don't get to decide. The conviction has been determined through an appropriate process, and he's not arguing about that now. And so they say, look, our job is that we have to take as a given that you did this and look for evidence that something has changed within you so that we can trust that you won't do it again. And when you go, I never did anything, that doesn't evidence that you can trust that you won't do it again. There are other processes for your innocence arguments, but it's just the price of parole. A couple points, Your Honor. First, admittedly, the actual innocence motion is not before this Court. Indeed, there's actually one pending in the D.C. Superior Court. That's not what we're asking here. The standard here is whether there's any reasonable probability, and potentially, Defendant Pelley could put forward an argument that admission of guilt is a factor in that consideration. But every single other piece of evidence put before the examiner, including the, quote, exemplary reviews that he got internally, the fact that he was sort of a trusted cadre member, which the examiner found was the most coveted spot for inmates, the fact that he had availability of both housing and a job afterwards, the fact that he had at that point gone 19 years without any form of institutional incident, the fact that he was at that point 58 years old, there's a whole bunch of other factors weighing on the other side. I know, but, I mean, I think it's pretty clear that the Parole Board, I keep saying Parole Board, Parole Commission has to predict and make an evaluation and judgment. And even if there are objective factors to the average person that might, or indeed the direct supervisor of the prisoner, nevertheless, the Parole Board, Parole Commission could decide, not in our judgment. Admittedly, the Parole Commission does have a substantial amount of discretion written into the standard. You have the former chief of police as the chairman of the commission. Yes. The standard in the, the only evidence introduced to the contrary of the reasonable probability was the executive reviewer's determination based, and the only evidence introduced there, which ultimately became this explicit threshold criteria, was failure to take responsibility. There was no weighing of the other thing, it just says my belief. Well, I was a little more troubled by the notion that we will not grant you to take a course which is unavailable at the facility in which we are housing you. I'm, Your Honor, I can't speak directly for him, but appellant and we on behalf of appellant are similarly troubled. You can make a legal argument. Yes, similarly troubled. I mean, he, in the 2010 notice of action, was instructed to take a course that addressed his instant offense behaviors, was the term the commission used. He then went to the psychiatrist and said, what do you have? Do you have this cage the rage course? All I'm getting at is would it be an argument, even in a habeas context that I am being unlawfully held on the basis of a condition that it is physically impossible for me to comply with. And the authorities who are holding me have, at least so far, refused to transfer me to a facility where this program is available so I can participate in it and hopefully demonstrate to the commission that I should be placed on parole. Absolutely, Your Honor. If it were me making that argument, I would certainly make that argument and say. Well, who are you here? Your amicus is trying to help the court understand this issue. That's all I'm getting at. Yes. He certainly was put in a bind that he can't get himself out of. He did everything he could have. No, but I'm jumping, not signaling. I'm focusing on what legal remedies. So in habeas, I've never seen that, but I know Judge Brown and I have sat on a case where an equal protection argument was made on behalf of the D.C. prisoners. They were being treated in some manner differently than the federal prisoners. So, anyway. And if I may, just very briefly on two last points the defendant appellant made. First, the standard from Cleavinger was not actual proof of political influence. It's whether they are, and I have the language right here, whether they are insulated from political influence. And so the absence of evidence of being politically influenced is not the standard, and here they are not so insulated. The OLC has, in fact, said that they do not have the, quote, And finally, just on the point about Ellis. Ellis only holds that there's no liberty interest in a low salient factor score. That is not what Redmond would be asserting. Redmond would be asserting separate constitutional violations, so I would submit that Ellis is not controlling. Thank you very much for your time, and we respectfully request that you overturn and revamp. Well, counsel, we thank you very much for your assistance to the court. Thank you very much.
judges: Rogers, Brown, Millett